# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2021

Lyle W. Cayce
Clerk

No. 20-50721

Noble Capital Group, L.L.C.; Noble Capital Fund Management, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

US Capital Partners, Incorporated; Jeffrey Sweeney; Charles Towle; Patrick Steele,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-01255

Before Ho, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:*

Plaintiffs entered into an agreement containing an arbitration provision, which included a clause delegating all disputes regarding the enforceability of that agreement to the arbitrator. Because Plaintiffs fail to

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

challenge that delegation clause specifically, we affirm the district court's judgment granting Defendants' motion to compel arbitration.

## I.

Plaintiff Noble Capital Group ("Noble Group") is an Austin-based private lending organization that specializes in making loans to real estate entrepreneurs in Texas. Plaintiff Noble Capital Fund Management ("Noble Management") is a subsidiary of Noble Group and serves as its "operations arm." We refer to these entities collectively as "Noble." Defendant US Capital Partners ("US Capital") is a San Francisco-based corporation that provides financial advisory services related to capital formation. Defendants Jeffrey Sweeney, Charles Towle, and Patrick Steele ("individual defendants") are partners and principals of US Capital.

Noble Management and US Capital entered into a series of agreements establishing an investment fund, whereby US Capital would administer the fund and drum up investors while Noble would make the loans. The agreements contained arbitration provisions requiring the parties to arbitrate any dispute arising out of or related to the agreements. The agreements also provided that California law applies to any dispute. Although the agreements stated that they applied to Noble Management and its "affiliates," "subsidiaries," "associated companies," "comanaged entities," "successors," and "assigns," Noble Group did not sign the agreements.

Noble alleges that Defendants "made a whole host of fraudulent representations" relating to their ability to raise capital in order to get Noble to do business. Noble further alleges that, soon after the fund was established, Defendants failed to deliver on their promise to raise capital and that they "began efforts to string Noble along so they could continue to extract fees from the Fund."

No. 20-50721

In December 2019, Noble filed this suit alleging that Defendants engaged in fraud. When Defendants moved to compel arbitration, Noble amended their complaint and added a new cause of action alleging that Defendants fraudulently induced them to assent to the arbitration clauses. Noble alleged that Defendants falsely represented that they had been subject to only minimal litigation in the past, failing to disclose that they had a history of confidential arbitrations. The magistrate judge granted Defendants' motion to compel arbitration, and the district court adopted the magistrate judge's report and recommendation over Noble's objections. Noble appeals.

II.

Noble argues that the district court erred by granting Defendants' motion to compel arbitration. We review this ruling *de novo. See, e.g., Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

When determining whether to compel arbitration, "we first look to see if an agreement to arbitrate was formed"—that is, whether the parties actually entered into an agreement to arbitrate. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018). "[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003)).

Each of the parties' agreements contained arbitration clauses providing that:

> Any dispute, claim, or controversy arising out of or relating to [the] Agreement, including the negotiation, breach, validity or performance of the Agreement, the rights and obligations contemplated by the Agreement, any claims of fraud or fraud

No. 20-50721

in the inducement, and any claims related to the scope or applicability of this agreement to arbitrate, shall be resolved [by arbitration pursuant to JAMS/FINRA rules and procedures].[1]

Noble Management does not dispute that it entered into agreements containing arbitration clauses. Noble Group, however, argues that because it was not a signatory to any of the agreements containing arbitration provisions, it cannot be compelled to arbitrate. But in its complaint, Noble Group claimed that Defendants fraudulently induced it to assent to the arbitration clauses. So Noble Group cannot now claim that it never assented to the arbitration clauses. *See Cohen v. TNP 2008 Participating Notes Program, LLC*, 243 Cal. Rptr. 3d 340, 358 (Ct. App. 2019) (recognizing that a non-signatory may be bound to arbitrate by estoppel).

Next, we "determine if [the agreement to arbitrate] contains a delegation clause." *Edwards*, 888 F.3d at 744. A delegation clause exists if there is "clear and unmistakable evidence" that the parties "agreed to arbitrate arbitrability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (brackets and quotation omitted).

We agree with the district court that such evidence exists here. The agreements delegate to the arbitrator the exact challenges that Noble brings in this case: claims of "fraud or fraud in the inducement." The agreements also delegate to the arbitrator questions relating to the "validity" of any part of the agreements.

Because we conclude that there is a delegation clause, we next ask whether there is a "challenge to the delegation clause itself." *Edwards*, 888 F.3d at 744. In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the

---

[1] The clauses are substantially the same, except that two of the agreements provide that the arbitration is to be conducted under JAMS rules, and one of the agreements provides that it is to be conducted under FINRA rules.

No. 20-50721

Supreme Court held that delegation clauses—even those that are contained within an arbitration provision or a broader agreement—are severable. *Id.* at 71–72. *See also id.* at 72 ("Application of the severability rule does not depend on the substance of the remainder of the contract."). Because delegation clauses are severable, they must be challenged "specifically." *Id.* at 71. Accordingly, "absent a challenge to the delegation clause itself, [courts] will consider that clause to be valid and compel arbitration." *Edwards*, 888 F.3d at 744. "Challenges to the arbitration agreement as a whole are to be heard by the arbitrator." *Id.*

The district court correctly concluded that Noble's fraudulent inducement claim fails to challenge the delegation clauses in particular, and as a result their enforceability challenges must be sent to the arbitrator. Just like the employee in *Rent-A-Center* failed to challenge the specific delegation clause by arguing that the entire arbitration agreement was unconscionable, Noble similarly fails to challenge the specific delegation provision by arguing that the entire arbitration provision was procured by fraud. "Nowhere in [their] opposition to [Defendants'] motion to compel arbitration did [Noble] even mention the delegation provision." *Rent-A-Center*, 561 U.S. at 72.

Accordingly, the district court correctly granted Defendants' motion to compel arbitration. *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 554 (5th Cir. 2018) ("[Noble's] contention is that the arbitration provision as a whole is unenforceable under [California] law. Because [their] challenge is not specific to the delegation clause, [Noble] must present it to an arbitrator.").

Finally, Noble argues that even if the arbitration provisions are enforceable, they cannot be compelled to arbitrate against individual defendants Sweeney, Towle, and Steele because those parties did not sign the agreements in their personal capacity and are therefore not entitled to enforce them. The district court held that equitable estoppel prevented

5

Noble from arbitrating its claims against US Capital, while litigating in court its claims against the individual defendants.

We review the district court's decision to apply equitable estoppel for abuse of discretion. *See*, *e.g.*, *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). We hold that the district court did not abuse its discretion because Noble alleges that US Capital and the individual defendants acted together as a single unit to defraud Noble and because such allegations are connected with the obligations of the parties' agreements. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (holding that equitable estoppel applies "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement'") (alteration in original) (quoting *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541, 544 (Ct. App. 2009)).

\* \* \*

For the foregoing reasons, we affirm.